**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVEN SHAH, <br><br> Plaintiff, <br><br> vs. <br><br> CASTLIGHT HEALTH, INC., BRYAN ROBERTS,  ED PARK DAVID B. SINGER, MICHAEL EBERHAR,D DAVID EBERSMAN, KENNY VAN ZANT, SETH COHEN, JUDITH K. VERHAVE, and MAEVE O'MEARA, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1)  Violation of § 14 (e) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 14 (d) of the Securities Exchange Act of 1934 <br> (3)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Deven Shah ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### <u>SUMMARY OF THE ACTION</u>

1.       Plaintiff brings this stockholder action against Castlight Health, Inc.. ("Castlight" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Vera Whole Health, Inc. ("Parent") through merger vehicle Carbon Merger Sub, Inc. ("Purchaser") (collectively with "Parent", "Vera") as a result of

an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an January 4, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Vera will acquire all of the remaining outstanding shares of Castlight's common stock at a price of $2.05 per share in cash. As a result, Castlight will become an indirect wholly-owned subsidiary of Vera.

3.      Thereafter, on January 19, 2022, Castlight filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process in which the Board failed to create a committee of independent and disinterested directors to run the sales process.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act Defendants caused to be filed the materially deficient Recommendation Statement on January 19, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Castlight shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender

in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Castlight, provided by Castlight to the Company's financial advisor William Blair & Company, L.L.C. ("William Blair"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by William Blair and provided to the Company and the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a Castlight stockholder.

10.     Castlight Health, Inc. provides health navigation solutions for employers and health plan customers in education, manufacturing, retail, government, and technology industries in the United States. Castlight is incorporated under the laws of the State of Delaware and has its principal place of business at 150 Spear Street, Suite 400, San Francisco, CA 94608.  Shares of Castlight common stock are traded on the New York Stock Exchange under the symbol "CSLT".

11.     Defendant Bryan Roberts, ("Roberts") has been a Director of the Company at all relevant times.  In addition, Roberts serves as the Chairman of the Board of Directors.

12.     Defendant Ed Park ("Park") has been a director of the Company at all relevant times.

13.     Defendant David B. Singer ("Singer") has been a director of the Company at all relevant times.

14.     Defendant Michael Eberhard ("Eberhard") has been a director of the Company at all relevant times.

15. Defendant David Ebersman ("Ebersman") has been a director of the Company at all relevant times.

16. Defendant Kenny Van Zant ("Van Zant") has been a director of the Company at all relevant times.

17. Defendant Seth Cohen ("Cohen") has been a director of the Company at all relevant times.

18. Defendant Judith K. Verhave ("Verhave") has been a director of the Company at all relevant times.

19. Defendant Maeve O'Meara ("O'Meara") has been a director of the Company at all relevant times. In addition, O'Meara serves as the company's Chief Executive Officer ("CEO")

20. Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21. Non-Party Parent is a healthcare company that delivers primary care, acute care, and health coaching via on or near-site clinics. Parent was founded in 2008 and is headquartered in Seattle, Washington. Parent is a private corporation.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Castlight maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

*Company Background*

25.     Castlight Health, Inc. provides health navigation solutions for employers and health plan customers in education, manufacturing, retail, government, and technology industries in the United States. It provides Care Guidance Navigator that enables users to make better care decisions and navigate the employer-sponsored healthcare benefit programs; Wellbeing Navigator, which helps to drive engagement across an employer's benefits program; Complete Health Navigator that combines the Wellbeing Navigator and Care Guidance Navigator packages for unified user experience; and Castlight Care Guides, a high-touch navigation service. The company also offers white-labeled health navigation solutions and embedded platform technology services. In addition, it provides implementation and marketplace services. The company was formerly known as Ventana Health Services and changed its name to Castlight Health, Inc. in April 2010. Castlight Health, Inc. was incorporated in 2008 and is headquartered in San Francisco, California.

26.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 2, 2021 press release announcing its 2021 Q3 financial results, the Company predicted that in coming years, revenue would increase in the range of $135 million to $140 million and Non-GAAP operating loss would decrease from $4 million to income of $1 million

27.     Speaking on these positive results, CEO Defendant O'Meara commented on the Company's positive financial results as follows, "'We delivered a solid third quarter reflecting continued progress across both our employer and health plan businesses," "This quarter our team produced our highest direct-to-employer bookings in over three years, which led to our third straight quarter of sequential ARR growth, and our health plan pipeline grew substantially in Q3.

The momentum we are seeing is a direct result of the strong product-market fit of our next generation navigation solution that seamlessly blends technology and service to produce results for our customers.'"

28.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Castlight.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Castlight to enter into the Proposed Transaction without providing requisite information to Castlight stockholders such as Plaintiff.

***The Flawed Sales Process***

30.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

31.     Notably, the Recommendation Statement indicates that "Strategic Review Committee" created to run the sales process was composed of four Directors, two of whom, Defendant O'Meara and Defendant Roberts are clearly not independent or disinterested due to their status as CEO and Co-Founder/Chairman, respectively.  The Recommendation Statement fails to indicate why this committee was not populated solely with Board members who were disinterested and independent.

32.     The Recommendation Statement also fails to contain adequate information as to why no "majority of the minority" provision was included given the fact that funds affiliated with financial funds Venrock and Maverick own at least approximately 18% of the outstanding stock of the Company, and that all such shares have been committed to tendering in favor of the Proposed Transaction via a Tender and Voting Agreement.

33.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Vera, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Vera, throughout the sales process, if any, would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner

**_The Proposed Transaction_**

35.     On January 5, 2022, Castlight and Vera issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SAN FRANCISCO and SEATTLE, Jan. 5, 2022** /PRNewswire/ -- Castlight Health, Inc. ("Castlight") (NYSE: CSLT), a leading healthcare data and navigation company, and Vera Whole Health, Inc. ("Vera"), a pioneer in advanced primary care, today jointly announced an agreement under which the companies will combine. The combined company will integrate Castlight's market-leading technology with Vera's purpose-built clinics, health care professionals and strategic partnerships with local providers, with the potential to transform how patients access and engage with care, how providers deliver care, and how employers and other purchasers pay for care.
>
> The transaction, which has been unanimously approved by Castlight's Board of Directors, is valued at an equity value of approximately $370 million and will be structured as an all cash tender offer to acquire all outstanding shares of Castlight. Under the terms of the agreement, Vera will commence a tender offer to acquire all outstanding shares of Castlight Class A common stock and Class B common stock for $2.05 in cash per share, representing a 25% premium to the closing price as of January 4th, 2022, and a 35% premium to the 30-day volume weighted average share price. Clayton, Dubilier & Rice ("CD&R") funds, Vera's majority equity holder, have committed to invest up to $338 million to support the combination, and Anthem, Inc. ("Anthem"), a leading health company and long-time strategic customer of Castlight, will make an investment in the combined company.
>
> "We believe the combined company has a unique opportunity to deliver large scale innovation to the commercial customer segment and accelerate the restructuring of

the healthcare market to a stronger focus on value," said Ron Williams, Chairman of Vera and Operating Advisor to CD&R funds.

"Integrating our navigation data and technology with Vera's high quality primary care offering addresses the fundamental need for a coordinated and personalized patient experience, while enabling providers to improve outcomes and lower costs and employers to participate in full risk sharing for the first time," said Maeve O'Meara, Chief Executive Officer of Castlight. "We are thrilled to work with Vera and CD&R to open this new frontier of healthcare."

"Equipping our advanced primary care teams and our patients with Castlight's industry leading digital navigation and engagement capabilities enhances our ability to reduce total cost of care while improving the social, mental and physical health of our patients," said Ryan Schmid, Founder and Chief Executive Officer of Vera. "Personalizing care plans and engagement campaigns while providing our care teams and patients with quality and cost data will greatly enhance the patient journey and our ability to manage commercial populations."

"We believe this is a milestone for the healthcare system because of the way it merges benefits and care navigation, including digital touchpoints, into a patient's primary care relationship," said Ravi Sachdev, CD&R Partner, and member of Vera's Board of Directors. "We believe a combination of these two innovative companies will transform care in local markets across the country."

Bryony Winn, President of Anthem Health Solutions added, "We are excited at the potential of this unique combination to deliver a differentiated primary care experience by bringing a value-based care model to the commercial healthcare market."

Anthem joins Morgan Health, the JP Morgan Chase & Co business focused on the transformation of employee healthcare, and Central Ohio Primary Care, the largest independent physician owned primary care group in the country, as key strategic partners in the combined company. CD&R's initial investment in Vera was made in early 2021 and followed a series of investments in companies focusing on value-based care, including agilon health, Millennium Physician Group, and naviHealth.

The transaction is subject to regulatory approval, the tender of a majority of Castlight's outstanding shares of common stock, and other customary closing conditions. Upon completion of the transaction, Castlight will become a privately held company and shares of Castlight's Class B common stock will no longer be listed on any public market. The parties anticipate that the combination will be completed in the first quarter of 2022.

William Blair is serving as exclusive financial advisor to Castlight, and Fenwick & West LLP is serving as legal advisor. Kirkland & Ellis LLP is serving as legal advisor to Vera.

COMPLAINT

*Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicates that Castlight insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Castlight.

37.     Notably, Company insiders (including Venrock, which owns its ~13.41% of Company Stock through Director Roberts), currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

**Table of Share-Related Payments**

| Name | Number of Class A Shares | Number of Class B Shares | Total Offer Price Payable for Shares |
| --- | --- | --- | --- |
| **Executive Officers** | | | |
| Maeve O'Meara | — | 1,625,989 | $ 3,333,277 |
| Will Bondurant | — | 355,661 | 729,105 |
| **Non-Employee Directors** | | | |
| Bryan Roberts[1] | 15,568,571 | 5,625,094 | 43,447,013 |
| Seth Cohen | — | 183,258 | 375,679 |
| Michael Eberhard | 28,571 | 390,455 | 859,003 |
| David Ebersman | — | 630,803 | 1,293,146 |
| Ed Park | 28,571 | 369,830 | 816,722 |
| David B. Singer | — | 369,830 | 758,152 |
| Kenny Van Zant | — | 626,440 | 1,284,202 |
| Judith K. Verhave | — | 316,162 | 648,132 |

38.     Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name | Vested Options | | Unvested Options | | |
| --- | --- | --- | --- | --- | --- |
| | Number of Underlying Shares (#)[1] | Option Cash Consideration Payable ($)[2] | Number of Underlying Shares (#)[3] | Potential Cash Replacement Amount Payable ($)[4] | Total Potential Cash Consideration Payable for Outstanding Stock Options ($)[5] |
| *Executive Officers:* | | | | | |
| Maeve O'Meara | 156,254 | 160,959.16 | 191,246 | 198,895.84 | 359,855.00 |
| Will Bondurant | 130,010 | 82,133.80 | 128,260 | 80,803.80 | 162,937.60 |
| *Non-Employee Directors:* | | | | | |
| Bryan Roberts | — | — | — | — | — |
| Seth Cohen | — | — | — | — | — |
| Michael Eberhard | — | — | — | — | — |
| David Ebersman | — | — | — | — | — |
| Ed Park | — | — | — | — | — |
| David B. Singer | — | — | — | — | — |
| Kenny Van Zant | — | — | — | — | — |
| Judith K. Verhave | — | — | — | — | — |

| Name | Unvested Castlight RSUs Accelerating at the Effective Time | | Unvested Castlight RSUs Not Accelerating at the Effective Time | | |
| --- | --- | --- | --- | --- | --- |
| | Number of Underlying Shares (#)[1] | RSU Cash Consideration Payable ($)[2] | Number of Underlying Shares (#)[3] | Potential Cash Amount Payable ($)[4] | Total RSU Potential Cash Amount Payable ($)[5] |
| *Executive Officers:* | | | | | |
| Maeve O'Meara | — | — | 1,840,663 | 3,773,359.15 | 3,773,359.15 |
| Will Bondurant | — | — | 609,316 | 1,249,097.80 | 1,249,097.80 |
| *Non-Employee Directors:* | | | | | |
| Bryan Roberts | 35,354 | 72,475.70 | — | — | 72,475.70 |
| Seth Cohen | 35,354 | 72,475.70 | — | — | 72,475.70 |
| Michael Eberhard | 44,104 | 90,413.20 | — | — | 90,413.20 |
| David Ebersman | 35,354 | 72,475.70 | — | — | 72,475.70 |
| Ed Park | 35,354 | 72,475.70 | — | — | 72,475.70 |
| David B. Singer | 35,354 | 72,475.70 | — | — | 72,475.70 |
| Kenny Van Zant | 35,354 | 72,475.70 | — | — | 72,475.70 |
| Judith K. Verhave | 35,354 | 72,475.70 | — | — | 72,475.70 |

COMPLAINT

39.     In addition, certain employment agreements with certain Castlight executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Golden Parachute Compensation**

| Executive Officer | Cash ($)[1] | Equity ($)[2] | Total ($)[3] |
|---|---|---|---|
| Maeve O'Meara | 1,044,077 | 3,972,254.99 | 5,016,331.99 |
| Will Bondurant | 364,386 | 1,329,901.60 | 1,694,287.60 |

40.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Castlight, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

42.     On January 19, 2022, the Castlight Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

    a.   The specific reasoning as to why the Strategic Review Committee created by the Board to run the sales process contained Board members who were not disinterested or independent;

    b.   Adequate reasoning as to why no "majority-of-the-minority" voting provision was included in the offer given that at least approximately 18% of the outstanding voting stock has been committed to tender in favor of the Proposed Transaction through Venrock and Maverick;

    c.   Whether the terms of any confidentiality agreements entered during the sales process between Castlight on the one hand, and any other third party (including Vera), if any, on the other hand, differed from one another, and if so, in what way;

    d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Vera) throughout the sales process, if any, would fall away; and

    e.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Castlight's Financial Projections*

44. The Recommendation Statement fails to provide material information concerning financial projections for Castlight provided by Castlight management and relied upon by William Blair in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, William Blair notes that it reviewed, "certain internal business, operating and financial information and forecasts of the Company for the fiscal years ending December 31, 2021 through December 31, 2026, including certain estimates as to potentially realizable existing federal net operating loss carryforwards expected to be utilized by Castlight (the "*Forecasts*"), prepared by Castlight's senior management and provided to William Blair on December 20, 2021."

46. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Castlight management provided to the Board, and William Blair. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount

rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47. With regard to the Q4 2021 Projections for Castlight, the Recommendation Statement fails to disclose material line items for the following metrics:

      a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: Interest, Taxes, Depreciation and Amortization.

48. With regard to the Q2 2021 Projections for Castlight, the Recommendation Statement fails to disclose material line items for the following metrics:

      a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: Interest, Taxes, Depreciation and Amortization.

49. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of William Blair's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

1   *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

2   *William Blair*

3   52.   In the Recommendation Statement, William Blair describes its fairness opinion and

4   the various valuation analyses performed to render such opinion.  However, the descriptions fail

5   to include necessary underlying data, support for conclusions, or the existence of, or basis for,

6   underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

7   valuations or evaluate the fairness opinions.

8   53.   With respect to the *Selected Public Companies Analysis*, the Recommendation

9   Statement fails to disclose the following:

10          a.   The specific metrics for each selected company analyzed; and

11          b.   The specific multiple reference ranges used for the analysis and the inputs and

12               assumptions upon which they were based.

13

14   54.   With respect to the *Selected Precedent Transactions Analysis*, the

15   Recommendation Statement fails to disclose the following:

16          a.   The specific metrics for each selected precedent transaction analyzed;

17          b.   The specific date on which each selected precedent transaction closed;

18          c.   The value of each selected precedent transaction; and

19          d.   The specific multiple reference ranges used for the analysis and the inputs and

20               assumptions upon which they were based

21

22   55.   With respect to the *Discounted Cash Flow Analysis*, the Recommendation

23   Statement fails to disclose the following:

24          a.   Castlight's projected future free cash flows for the fiscal years ending

25               December 31, 2021 through December 31, 2026, and the inputs and

26               assumptions used to determine them;

27

28

b. The specific terminal value of Castlight calculated;

c. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2.0% to 4.0%;

d. The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 12.0%;

e. Castlight's utilized weighted average cost of capital, and the inputs and assumptions used to determine it;

f. Castlight's net cash as of September 30, 2021;

g. Castlight's total diluted shares outstanding as of September 30, 2021; and

h. The specific adjustments made to take into account the impact of dilutive securities based on the treasury stock method at the implied share price.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Castlight stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

60.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

61.    The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

64.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65.    Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Defendants)**

66.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

67.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

68.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

69.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

70.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

71.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

72.     Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Castlight's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of Castlight within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Castlight to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Castlight and all of its employees.  As alleged above, Castlight is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 25, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 21 -
COMPLAINT